**NOT FOR PUBLICATION**

```
                 UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| MICHAEL HUGGINS, | : | Civil No. 09-3143 (NLH) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| WARDEN J. GRONDOLSKY, | : | |
| Respondent. | : | |

**NOEL L. HILLMAN**, District Judge:

    This matter comes before the Court upon petitioner Michael Huggins's ("Petitioner") filing of a petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 ("Petition"). Petitioner asserts that the staff of the F.C.I. Fort Dix violated Petitioner's rights under the Second Chance Act.  See generally, Docket Entry No. 1.  Petitioner duly prepaid his filing fee.

I.    BACKGROUND

    The Petition informs the Court that Petitioner was sentenced by the District Court for the District of Columbia to thirty-six months of imprisonment; the sentence was imposed (and, presumably, started running) on September 5, 2008.  See Docket Entry No. 1, at 1-2.  While the Petition is silent as to Petitioner's release date, the website of the Bureau of Prisons

indicates that Petitioner's projected release date is February 22, 2010. See <<http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=33331-083&x=65&y=17>>.

The Petition further informs the Court that a -- seemingly informal -- determination was made by Petitioner's unit managers: namely that, under the Second Chance Act, Petitioner qualifies for only thirty days of placement in a community correctional center ("CCC"). See Docket Entry No. 1, at 1 and 3 (alleging that the determination was made by Petitioner's unit managers rather than his warden, or higher officials at the Bureau of Prisons ("BOP")).

Asserting that the unit managers' determination was factually unfounded, Petitioner: (a) seeks this Court's order "moving the BOP to make the adequate changes in their discretionary decision making process and to have them implement the actual policy that controls these types of situations" (the Court interprets the foregoing as Petitioner's request for an order directing the BOP to place Petitioner in a CCC sooner than thirty days prior to his release); and (b) requests this Court to excuse Petitioner's failure to exhaust his administrative remedies on the grounds that "this cause of action would be futile" and because "the time sensitive nature of [Petitioner's] request seeing as how such a constraint would eat away any

possible time that this . . . Court would have if a ruling in [Petitioner's] favor would be granted" (the Court interprets this statement as an expression of Petitioner's concern that the remedy might be delayed as a result of Petitioner's waiting for the completion of the administrative process and as Petitioner's pessimism as to obtaining a more favorable outcome at higher levels of the BOP).  See id. at 2, 5.

## II.  JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody"; and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed."  Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges his

CCC placement, and he was incarcerated in New Jersey at the time he filed the Petition.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005); see also Spencer v. Kemna, 523 U.S. 1 (1998).

### III. DISCUSSION

#### A.    The Second Chance Act

The Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692, became effective as of April 9, 2008, and was codified at 18 U.S.C. §§ 3621, 3624.  The Second Chance Act increased the duration of pre-release custody placement in residential re-entry centers, also known as CCCs, from the maximum period of six months to the maximum period of twelve months and required the BOP to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008).

#### B.    Rationale of the Exhaustion Requirement

Although the exhaustion requirement is not jurisdictional but that of prudence, the requirement is diligently enforced by the federal courts.  See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996) (noting that "a procedural default in the administrative process bars judicial review

because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241").  In order for a federal prisoner to exhaust her administrative remedies, she must comply with 28 C.F.R. § 542.  See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 U.S. Dist. LEXIS 54310, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007).

To comply with the exhaustion requirement, an inmate first must informally present her complaint to staff through filing a BP-8 form, and staff shall attempt to informally resolve any issue.  See 28 C.F.R. § 542.13(a).

If unsuccessful at -- or dissatisfied with the outcome of -- informal resolution, the inmate shall raise her complaint formally, by filing a BP-9 form with the warden of the institution where she is confined.  See id. at § 542.14(a).  If dissatisfied with the warden's response, the inmate shall appeal an adverse decision by filing a BP-10 form with the Regional Office and, if the decision of the Regional Office still does not satisfy the inmate, the inmate shall file a BP-11 form with the

Central Office of the BOP. See id. at §§ 542.15(a) and 542.18. The logic of the procedure ensures that the agency, in this case, the BOP, would create an administrative record and the final decision entered by the Central Office would bind the BOP in its entirety. Consequently, no administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, 289 Fed. App'x 475 (3d Cir. 2008).

It is true that, in certain narrow circumstances, the exhaustion requirement is excused, and such exceptions were made even in the matters setting forth the Second Chance Act challenges. For instance, exhaustion was excused in Strong v. Schultz, 599 F. Supp. 2d 556 (D.N.J. 2009), where the Strong court described the pertinent events as follows:

> The BOP acknowledges that Strong pursued all three
> steps of the Administrative Remedy Program, with the
> final decision on May 19, 2008, by Harrell Watts of the
> Central Office. Respondents contend, however, that the
> Petition should nevertheless be dismissed as
> unexhausted because Petitioner did not exhaust
> administrative remedies a second time [around]. This
> Court notes that Strong is currently scheduled to be
> placed in a CCC for the final six months of his
> sentence . . . . Given that it took five months to
> exhaust administrative remedies the first time around,
> dismissal of the Petition as unexhausted would
> effectively moot Petitioner's § 2241 claim through no
> fault of his own.

Id. at *561 (citation omitted).

In contrast, where litigants had not attempted any exhaustion, the courts presiding over Second Chance Act

challenges systemically dismissed their petitions for failure to meet the exhaustion requirement. In Smith v. Grondolsky, 09-1355 (RMB) (D.N.J.), the very judge who granted a writ of habeas corpus in Strong, elaborated on one of these unexhausted scenarios, observing as follows:

> Here, in contrast [with Strong], Petitioner unambiguously indicates that he never attempted to exhaust his administrative remedies. . . . Thus, unlike the petitioner in Strong, Petitioner in the instant matter has ample time to: (a) seek administrative remedy; (b) return to the federal courts in the event he is unsatisfied with the final administrative determination; and (c) even obtain judicial relief in the form of CCC transfer for the maximum period envisioned by the Second Chance Act, 18 U.S.C. § 3624(c)(6) ([i.e., twelve months]). Reflecting on the interplay between the Second Chance Act and the exhaustion requirement, this Court finds persuasive the rationale of another court, which observed as follows:
>
>> The petitioner argues that exhausting his administrative remedies would be futile . . . The "futility" exception which the petitioner invokes applies in certain narrowly-defined circumstances, such as where there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." Colton v. Ashcroft, 299 F. Supp. 2d 681, 689-90 (E.D. Ky. 2004) (citing James v. United States Dept. of Health and Human Services, 824 F.2d 1132, 1139 (D.C.Cir.1987). While this argument holds more superficial appeal, the regulation at issue is comparatively new, as is the BOP's enforcement of it, and there is simply not yet a sufficiently-established record of the BOP's enforcement policies regarding the issue. The Court is not yet prepared to conclusively hold that the BOP's position on the matter is fixed and inflexible. The Court therefore holds that the petitioner has failed to provide a

> legally-sufficient justification for his failure to exhaust administrative remedies, and the petition must be denied as prematurely brought.
>
> Johnson v. Hogsten, 2009 U.S. Dist. LEXIS 32085, at *5-6 (E.D. Ky. Apr. 15, 2009). This Court agrees. While Petitioner invites this Court to reach an umbrella conclusion that no exhaustion of administrative remedies is ever required for any litigant raising a § 2241 challenge on the grounds of the Second Chance Act, this Court declines the invitation and finds that such holding would fly in the face of the Third Circuit's teaching -- as to the firmness of the exhaustion requirement -- articulated in Callwood v. Enos, 230 F.3d at 634, and Moscato, 98 F.3d at 760-62.

Smith v. Grondolsky, 09-1355, Docket Entry No. 4, at 4-5 (original brackets omitted); accord Breazeale v. Shultz, 2009 U.S. Dist. LEXIS 43671 (D.N.J. May 19, 2009) ("Petitioner maintains that exhaustion in his case would be futile because his projected release date [comes in two months], and there is insufficient time to exhaust the three steps of the Administrative Remedy Program. . . . [G]iven the time limits set forth in 28 C.F.R. § 542.18 and the fact that Petitioner's sentence does not expire for another two months, this Court sees no reason to excuse Petitioner's failure to at the very least [submit] a BP-9 administrative remedy request to the Warden").

    **C.    Petitioner's Failure to Exhaust his Petition**

Here, Petitioner asserts that his failure to meet the exhaustion requirement should be excused because Petitioner is pessimistic about the likelihood of obtaining a more favorable determination from his warden, or from the Regional Office, or

from the Central Office and, in addition, because Petitioner worries that the period of time taken to pursue an administrative remedy might, as he put it, "eat away any possible time" that he could be spending at a CCC (rather than in prison).  See Docket Entry No. 1, at 2.  The Court disagrees.

Petitioner's pessimism as to outcome of the administrative process and his concerns of losing what is, at the instant juncture, merely the hypothetical remedy of an earlier placement are insufficient reasons to excuse exhaustion.

In anything, the Petitioner's case necessitates exhaustion since, here, Petitioner attacks not a procedural aspect of his administrative process but rather the rationale of the BOP's factual and substantive determination.  This court can not review that determination from any source other than the administrative record - a record that does not yet exist - and, in any event, cannot disturbed that determination unless it represents an unreasonable – rather than a merely undesirable – application of the statutory mandate.  See Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837 (1984); Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (holding that "a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another").

Here, this Court cannot deem the warden, the Regional Office and the Central Office bound by – and responsible for – a staff member's position: it is quite plausible that the warden, the Regional Office and the Central Office could arrive at the conclusion that Petitioner qualifies for a longer period of CCC, and it is certain that the warden and two levels of appellate administrative offices would provide Petitioner –- and this Court, in the event Petitioner renews his challenges –- with a detailed factual explanation as to the rationale of the agency's position.

Moreover, while the Court is mindful of the fact that, at the time of entry of this Opinion and accompanying Order, Petitioner is serving his last year of prison term, i.e., the year during which he might qualify for a CCC placement under the Second Chance Act, this fact does not alter the Court's analysis.

The Second Chance Act became effective as of April 9, 2008, prior to the petitioner's sentence date.  Thus at the time of his sentence, Petitioner: (a) was well aware of approximately when his term of imprisonment would end; and (b) had more than a year until his release.  Petitioner himself acknowledges that the BOP typically considers inmates for CCC placement seventeen to nineteen months prior to their release, see Docket Entry No. 1,

at 3, and his Petition does not assert that Petitioner's assessment by the BOP was unduly delayed.[1]  See generally, id.

In sum, Petitioner had more than an ample period of time to exhaust his administrative remedies.  He, however, elected not to do so; rather, it appears from his projected release date that he waited until his eligibility period under the Second Chance Act started running and was well under way to initiate this action. Consequently, the temporal difficulty -- if any -- which Petitioner might be facing, is of his own making, and this self-inflicted situation cannot serve as a basis for excusing the exhaustion requirement.  See Johnson v. Hogsten, 2009 U.S. Dist. LEXIS 32085, at *5 ("[Petitioner] argues that the Court should excuse him from completing the BOP's grievance process because he will be unable to do so before the date on which he would be entitled to transfer to a [CCC] had the BOP properly applied the Second Chance Act.  This argument is without merit. . . . [H]ad he properly invoked the BOP's grievance process . . . , he would have had ample time to complete the exhaustion process. Therefore, any injury Johnson would suffer from his inability to

---

[1]  In fact, the Petition is: (a) wholly silent as to when Petitioner learned about the unit manager's decision as to his CCC placement, and (b) makes no assertion that Petitioner raised the issue of CCC placement with his prison officials prior to or on February 22, 2009, that is, on the date when Petitioner could have been, theoretically, transferred to CCC.  See generally, Docket Entry No. 1.

complete the grievance process in time to obtain the full measure of relief he now seeks is self-inflicted").

**V.   CONCLUSION**

Because the Petition, on its face, unambiguously indicates that Petitioner failed to exhaust administrative remedies, and Petitioner did not state valid grounds excusing his failure to exhaust available administrative remedies, this Court will dismiss the Petition.  See Lindsay v. Williamson, 271 Fed. App'x 158, 160 (3d Cir. 2008) (affirming summary dismissal of § 2241 petition challenging BOP's execution of sentence "[b]ecause the District Court could determine from the face of [the litigant's]s petition that he did not exhaust his administrative remedies, a prerequisite to suit"); Warwick v. Miner, 257 Fed. App'x 475 (3d Cir. 2007) (affirming dismissal of § 2241 petition challenging BOP's calculation of sentence for failure to exhaust Administrative Remedy Program).

The dismissal is without prejudice to Petitioner's filing of a new petition after Petitioner duly completes the process of administrative exhaustion.

An appropriate Order accompanies this Opinion.

      /s/ NOEL L. HILLMAN
   **NOEL L. HILLMAN**
   **United States District Judge**

Dated: August 4, 2009
At Camden, New Jersey